# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ADVOCATE ILLINOIS MASONIC )
MEDICAL CENTER )
836 West Wellington Avenue )
Chicago, IL 60657 )
 ) Case No. 1:24-cv-2064
ALLIANCEHEALTH DURANT )
1800 University Boulevard )
Durant, OK 74701 )
 )
ASCENSION BORGESS HOSPITAL )
1521 Gull Road )
Kalamazoo, MI 49048 )
 )
ASCENSION GENESYS HOSPITAL )
1 Genesys Parkway )
Grand Blanc, MI 48439 )
 )
ASCENSION MACOMB - OAKLAND )
HOSPITAL, WARREN CAMPUS )
11800 East 12 Mile Road )
Warren, MI 48093 )
 )
ASCENSION PROVIDENCE HOSPITAL - )
SOUTHFIELD CAMPUS )
16001 West 9 Mile Road )
Southfield, MI 48075 )
 )
ASCENSION RESURRECTION )
7435 West Talcott Avenue )
Chicago, IL 60631 )
 )
ASCENSION SAINT JOHN HOSPITAL )
22101 Moross )
Detroit, MI 48236 )
 )
ASCENSION SAINT JOSEPH -CHICAGO )
2900 North Lake Shore Drive )
Chicago, IL 60657 )
 )
ASCENSION SAINT VINCENT HOSPITAL )
- INDIANAPOLIS )
2001 West 86th Street )
Indianapolis, IN 46260 )

ASCENSION ST. JOHN MEDICAL )
CENTER )
1923 South Utica Avenue )
Tulsa, OK 74104 )
)
ASCENSION VIA CHRISTI ST. FRANCIS )
929 North Saint Francis )
Wichita, KS 67214 )
)
ASTRIA REGIONAL MEDICAL CENTER )
110 South Ninth Avenue )
Yakima, WA 98902 )
)
AULTMAN HOSPITAL )
2600 Sixth Street Southwest )
Canton, OH 44710 )
)
AURORA ST. LUKE'S MEDICAL CENTER )
2900 West Oklahoma Avenue )
Milwaukee, WI 53215 )
)
AURORA WEST ALLIS MEDICAL )
CENTER )
8901 West Lincoln Avenue )
West Allis, WI 53227 )
)
BAPTIST HEALTH-FORT SMITH )
1001 Towson Avenue )
Fort Smith, AR 72901 )
)
BAYFRONT HEALTH ST. PETERSBURG )
701 Sixth Street South )
Saint Petersburg, FL 33701 )
)
BEN TAUB HOSPITAL )
1504 Taub Loop )
Houston, TX 77030 )
)
BETHESDA NORTH HOSPITAL )
10500 Montgomery Road )
Cincinnati, OH 45242 )
)
BRONXCARE DR. MARTIN LUTHER )
KING, JR. HEALTH CENTER )
1650 Grand Concourse )

Bronx, NY 10456                              )
                                             )
CABELL HUNTINGTON HOSPITAL                   )
1340 Hal Greer Boulevard                     )
Huntington, WV 25701                         )
                                             )
CAMC GREENBRIER VALLEY MEDICAL               )
CENTER                                       )
1320 Maplewood Avenue                        )
Ronceverte, WV 24970                         )
                                             )
CHA CAMBRIDGE HOSPITAL                       )
1493 Cambridge Street                        )
Cambridge, MA 2139                           )
                                             )
COOPER UNIVERSITY HOSPITAL                   )
One Cooper Plaza                             )
Camden, NJ 8103                              )
                                             )
CORWELL HEALTH BUTTERWORTH                   )
HOSPITAL                                     )
100 Michigan Street Northeast                )
Grand Rapids, MI 49503                       )
                                             )
DELL SETON MEDICAL CENTER AT                 )
THE UNIVERSITY OF TEXAS                      )
1500 Red River Street                        )
Austin, TX 78701                             )
                                             )
ENGLEWOOD HEALTH                             )
350 Engle Street                             )
Englewood, NJ 7631                           )
                                             )
EVANSTON HOSPITAL                            )
2650 Ridge Avenue                            )
Evanston, IL 60201                           )
                                             )
FRANCISCAN HEALTH OLYMPIA                    )
FIELDS                                       )
20201 South Crawford Avenue                  )
Olympia Fields, IL 60461                     )
                                             )
GOOD SAMARITAN HOSPITAL                      )
375 Dixmyth Avenue                           )
Cincinnati, OH 45220                         )
                                             )

GOOD SAMARITAN REGIONAL                 )
MEDICAL CENTER                          )
3600 Northwest Samaritan Drive          )
Corvallis, OR 97330                     )
                                        )
GRANDVIEW MEDICAL CENTER                )
3690 Grandview Parkway                  )
Birmingham, AL 35243                    )
                                        )
INTEGRIS BAPTIST MEDICAL CENTER         )
3300 Northwest Expressway               )
Oklahoma City, OK 73112                 )
                                        )
IU HEALTH METHODIST UNIVERSITY          )
1701 North Senate Blvd                  )
Indianapolis, IN 46202                  )
                                        )
JAMAICA HOSPITAL MEDICAL CENTER         )
8900 Vanwyck Expressway                 )
Jamaica, NY 11418                       )
                                        )
JEFFERSON ABINGTON HOSPITAL             )
1200 Old York Road                      )
Abington, PA 19001                      )
                                        )
JEFFERSON CHERRY HILL HOSPITAL          )
2201 Chapel Avenue West                 )
Cherry Hill, NJ 8002                    )
                                        )
JEFFERSON TORRESDALE HOSPITAL           )
10800 Knights Road                      )
Philadelphia, PA 19114                  )
                                        )
JOHN PETER SMITH HOSPITAL               )
1500 South Main Street                  )
Fort Worth, TX 76104                    )
                                        )
LEHIGH VALLEY HOSPITAL - CEDAR          )
CREST                                   )
1200 South Cedar Crest Boulevard        )
Allentown, PA 18103                     )
                                        )
LEHIGH VALLEY HOSPITAL -                )
MUHLENBERG                              )
2545 Schoenersville Road                )
Bethlehem, PA 18017                     )

LUTHERAN HOSPITAL )
7950 West Jefferson Boulevard )
Fort Wayne, IN 46804 )
)
MAINE MEDICAL CENTER )
22 Bramhall Street )
Portland, ME 4102 )
)
MAYO BUILDING AND HOSPITAL )
4500 San Pablo Road )
Jacksonville, FL 32224 )
)
MAYO CLINIC HOSPITAL, SAINT )
MARY'S CAMPUS )
1216 Second Street Southwest )
Rochester, MN 55902 )
)
MAYO CLINIC HOSPITAL, PHOENIX )
ARIZONA )
5777 East Mayo Boulevard )
Phoenix, AZ 85054 )
)
MEMORIAL HOSPITAL )
615 North Michigan Street )
South Bend, IN 46601 )
)
METHODIST HOSPITAL )
6500 Excelsior Boulevard )
Saint Louis Park, MN 55426 )
)
MIDDLESEX HOSPITAL )
28 Crescent Street )
Middletown, CT 6457 )
)
MOBERLY REGIONAL MEDICAL )
CENTER )
1515 Union Avenue )
Moberly, MO 65270 )
)
MORRISTOWN MEDICAL CENTER )
100 Madison Avenue )
Morristown, NJ 7902 )
)
MULTICARE DEACONESS HOSPITAL )
800 West Fifth Avenue )

Spokane, WA 99204                              )
                                               )
NORTHEAST REGIONAL MEDICAL                     )
CENTER                                         )
315 South Osteopathy                           )
Kirksville, MO 63501                           )
                                               )
NORTHSIDE REGIONAL MEDICAL                     )
CENTER                                         )
500 Gypsy Lane                                 )
Youngstown, OH 44501                           )
                                               )
NORTHWEST MEDICAL CENTER -                     )
SPRINGDALE                                     )
609 West Maple Avenue                          )
Springdale, AR 72764                           )
                                               )
NORTON HOSPITAL                                )
200 East Chestnut Street                       )
Louisville, KY 46202                           )
                                               )
ORLANDO HEALTH ORLANDO                         )
REGIONAL MEDICAL CENTER                        )
52 West Underwood Street                       )
Orlando, FL 32806                              )
                                               )
OVERLOOK MEDICAL CENTER                        )
99 Beauvoir Avenue                             )
Summit, NJ 7902                                )
                                               )
PARKLAND HOSPITAL                              )
5200 Harry Hines Boulevard                     )
Dallas, TX 75235                               )
                                               )
REGIONAL HOSPITAL OF SCRANTON                  )
746 Jefferson Avenue                           )
Scranton, PA 18510                             )
                                               )
REGIONS HOSPITAL                               )
640 Jackson Street                             )
Saint Paul, MN 55101                           )
                                               )
RHODE ISLAND HOSPITAL                          )
593 Eddy Street                                )
Providence, RI 2903                            )
                                               )

SAINT JOSEPH'S UNIVERSITY MEDICAL          )
CENTER                                     )
703 Main Street                            )
Paterson, NJ 7503                          )
                                           )
SAINT MARY'S MEDICAL CENTER                )
2900 First Avenue                          )
Huntington, WV 25702                       )
                                           )
SANFORD MEDICAL CENTER -                   )
BISMARCK                                   )
300 North Seventh Street                   )
Bismark, ND 58501                          )
                                           )
SANFORD MEDICAL CENTER FARGO               )
5225 23rd Avenue South                     )
Fargo, ND 58104                            )
                                           )
SANFORD USD MEDICAL CENTER                 )
1305 West 18th Street                      )
Sioux Falls, SD 57105                      )
                                           )
SIDNEY AND LOIS ESKENAZI                   )
HOSPITAL                                   )
720 Eskenazi Avenue                        )
Indianapolis, IN 46202                     )
                                           )
SPARROW HOSPITAL                           )
1215 East Michigan Avenue                  )
Lansing, MI 48912                          )
                                           )
SPRINGFIELD MEMORIAL HOSPITAL              )
701 North First Street                     )
Springfield, IL 62781                      )
                                           )
ST. ELIZABETH EDGEWOOD HOSPITAL            )
1 Medical Village Drive                    )
Edgewood, KY 41017                         )
                                           )
ST. LUKE'S EASTON CAMPUS                   )
250 South 21st Street                      )
Easton, PA 18042                           )
                                           )
SWEDISH HOSPITAL                           )
5145 North California Avenue               )
Chicago, IL 60625                          )

TEMPLE HEALTH-CHESTNUT HILL                )
HOSPITAL                                    )
8835 Germantown Avenue                      )
Philadelphia, PA 19118                      )
                                            )
THE MIRIAM HOSPITAL                         )
164 Summit Avenue                           )
Providence, RI 2906                         )
                                            )
THE UNIVERSITY OF TOLEDO                    )
MEDICAL CENTER                              )
3000 Arlington Avenue                       )
Toledo, OH 43614                            )
                                            )
THOMAS JEFFERSON UNIVERSITY                 )
HOSPITAL                                    )
111 South 11th Street                       )
Philadelphia, PA 19107                      )
                                            )
UNIVERSITY OF ILLINOIS MEDICAL              )
CENTER                                      )
1740 West Taylor Street                     )
Chicago, IL 60612                           )
                                            )
UNIVERSITY OF KENTUCKY ALBERT               )
B. CHANDLER HOSPITAL                        )
1000 South Limestone                        )
Lexington, KY 40536                         )
                                            )
UPMC MEMORIAL                               )
1701 Innovation Drive                       )
York, PA 17408                              )
                                            )
VHC HEALTH                                  )
1701 North George Mason Drive               )
Arlington, VA 22205                         )
                                            )
WILKES-BARRE GENERAL HOSPITAL               )
575 North River Street                      )
Wilkes-Barre, PA 18764                      )
                                            )
          Plaintiffs,                       )
                                            )
          vs.                               )
                                            )

XAVIER BECERRA,                                         )
Secretary of the United States Department of            )
Health and Human Services                              )
Room 700-E                                             )
200 Independence Avenue, S.W.                          )
Washington, D.C. 20201                                 )
                                                       )
      Defendant.                                     )

---

## Complaint for Judicial Review, Declaratory Relief, and Writ of Mandamus

---

### INTRODUCTION

1.      Plaintiff hospitals ("**Providers**") bring this action under 42 U.S.C.

§ 1395oo(f)(1), for judicial review of a final decision of Defendant, Xavier Becerra, acting

in his official capacity as the Secretary of HHS and acting through HHS's Provider

Reimbursement Review Board; and under 5 U.S.C. § 706(1) and 28 U.S.C. § 1361, for an

order compelling the Secretary to pay Providers amounts unlawfully withheld and duly

owed under the Medicare Act.

2.      On May 17, 2024, the Board dismissed the Providers' challenges to a CMS

regulation, the agency within HHS charged with administering the Medicare program.

(**Exhibit 1**). The regulation was published as part of the final rule for Hospital Inpatient

Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care

Hospital Prospective Payment System and Policy Changes and Fiscal Year 2023 Rates,

87 Fed. Reg. 48780, 49065–72 (Aug. 10, 2022) ("**FY 2023 IPPS Final Rule**" or "**Final

Rule**").

3.      CMS's regulation corrected an unlawful calculation used to pay Providers

for the direct costs of operating graduate medical education (**GME**) programs. The

corrected formula was retroactively effective for all cost reporting periods dating to 2001. Providers challenged the Secretary's contention in the Final Rule that he was prohibited by regulation from applying the retroactive rule to settled cost reports and could only apply it to open cost reports.

4.  The Board's dismissal wrongly held that it lacked jurisdiction over the Providers' appeals because the Final Rule was not an appealable "final determination" under 42 U.S.C. § 1395oo(a)(1); and, even if it were, Providers' appeals failed to meet the minimum content requirements for an appeal under 42 C.F.R. § 405.1837(c) because they did not include with their filing documentation supporting every past cost reporting period allegedly impacted by the retroactive rule.

5.  The Providers seek an order under 5 U.S.C. § 706(2), vacating and setting aside the Board's decision and its underlying findings and conclusions, and remanding to the Board for further proceedings.

6.  Alternatively, Providers seek an order under 5 U.S.C. § 706(1) or 28 U.S.C. § 1361 compelling the Secretary to recalculate their reimbursement for direct GME (**DGME**) program costs using the revised formula promulgated in the Final Rule.

**JURISDICTION**

7.  This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of an agency's final decision about Medicare reimbursement) and 28 U.S.C. § 1361 (mandamus).

8.     Venue is proper under 42 U.S.C. § 1395oo(f)(1) (review of a final Board decision) and 28 U.S.C. § 1391(e) (action against an officer or employee of United States acting in his official capacity).

**PARTIES**

9.     Plaintiffs are Medicare-participating teaching hospitals, whose timely appeals from the FY 2023 IPPS Final Rule were *sua sponte* dismissed by the Board. **Exhibit 2**.

10.     The Defendant, Xavier Becerra, is the Secretary of HHS. The Secretary, as the federal official responsible for administration of the Medicare program, has delegated that responsibility to CMS.

**BACKGROUND**

**A.  Medicare Reimbursement: Prospective Payments and Rulemaking**

11.     Congress established the Medicare program to provide health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is divided into several parts. Relevant to this appeal is, Part A. Medicare Part a provides for coverage and payment for inpatient hospital services. *See* 42 U.S.C. § 1395c- § 1395i-5.

12.     The Medicare program is federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977). Congress granted to HHS rulemaking authority to implement the Medicare program. 42 U.S.C. § 1395hh(a).

13.    Though initially payments were made on a fee-for-service basis, in 1983 Congress adopted the hospital inpatient prospective payment system (IPPS) to reimburse hospitals, including Providers, for inpatient hospital operating costs.

14.    Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs incurred by the hospitals. Rather, they stem from predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments.

**B.  DGME Reimbursement**

15.    The Medicare program reimburses teaching hospitals for the direct costs of hosting GME programs for physicians participating in residencies and fellowships. 42 U.S.C. § 1395ww(h). The statutory formula for computing DGME payments consists of three components:

    a.  the hospital's allowable number of full-time equivalent (**FTE**) residents—the component at issue;

    b.  the hospital's average cost per resident, also known as the per resident amount (**PRA**); and

    c.  the hospital's Medicare patient load, which is generally the percentage of the hospital's inpatient population who are Medicare beneficiaries (whether under Part A or Part C). § 1395ww(h).

16.    Under the statute, Hospitals can claim either 100% or 50% of a residents costs. That allowable cost turns on whether a resident is within their initial residency period or continuing beyond it. The Secretary must allow hospitals to claim 100% of

costs for residents within their initial residency period by assigning a weight of 1 FTE to each resident. § 1395ww(h)(4)(C)(ii), (iv).

17.     The Secretary must allow hospitals to claim 50% costs for residents in a post-initial residency period by assigning a weight of 0.5 FTE to each resident. § 1395ww(h)(4)(C)(ii), (iv).

18.     A hospital's total unweighted FTE Resident count is furthermore subject to a cap. § 1395ww(h)(4)(F)(i).

19.     A hospital's total *allowable* FTE Resident count (component (a) in the DGME payment formula above) is the lesser of its weighted FTE Resident count or its cap (an unweighted number).

20.     A hospital's cap is the number of residents counted in the hospital's most recent Medicare cost reporting period ending on or before December 31, 1996. 42 U.S.C. § 1395ww(h)(4)(F).

**C. Calculating the allowable FTE Resident count**

21.     Congress directed the Secretary to establish rules to calculate a hospital's total allowable FTE Resident count that are "consistent" with the implementing statute. 1395ww(h)(4)

22.     Under the Secretary's current regulation promulgated in the FY 2023 IPPS Final Rule, when a hospital's weighted FTE Resident count falls below its cap, that weighted count is also the allowable FTE Resident count. This is true even if the unweighted FTE Resident count exceeds the cap before applying the weighting factors. When a hospital's weighted FTE Resident count exceeds its cap, then the cap count is

the allowable FTE Resident count. This logical interpretation of the statutory formula was not always in place.

23.     Shortly after the cap was established, the Secretary published the FY 1998 IPPS Final Rule, which established a "proportional reduction" formula whenever a hospital's unweighted FTE Resident count exceeded the cap—even if its weighted FTE Resident count did not. Pub. L. 105-33, § 4623, 111 Stat. 251, 477 (1997); 62 Fed. Reg. 45966, 46005 (Aug. 29, 1997). Under the formula, a hospital's weighted FTE Resident count was multiplied by the proportion that its unweighted FTE Resident count exceeded its cap. *Id.*; 42 C.F.R. § 413.86(g)(4) (1997).

24.     After the Secretary began reimbursing teaching hospitals differently for primary care (including obstetrics and gynecology) Residents and non-primary care Residents, the proportional reduction formula was applied to those populations separately whenever the total unweighted FTE count of both populations exceeded the cap. *See* FY 2002 IPPS Final Rule, 66 Fed. Reg. 39826, 39894 (Aug. 1, 2001).

25.     Mathematically, the proportional reduction formula can be written as: (FTE cap / unweighted FTE Resident count) x (weighted FTE Resident count) = allowable FTE Resident count. *See Milton S. Hershey Med. Center v. Becerra*, No. 19-2680, 2021 WL 1966572, at *2 (D.D.C. May 17, 2021) ("*Hershey*").

26.     The effect of the proportional reduction formula was described in *Hershey* as follows:

> When a hospital exceeds the cap, its weighted FTE count is reduced commensurate with the amount by which the hospital exceeds the cap. For example, assuming a cap of 100,

and that a hospital meets that cap by employing 90 residents and 10 fellows, after weighting the fellows at 0.5, its post-regulation weighted FTE count is 95:

$$(100 / 100) \times 95 = 95$$

But if that hospital adds 10 more fellows (for a total of 90 residents and 20 fellows), thereby *exceeding* the cap, its post-regulation weighted FTE count is reduced as follows:

$$(100 / 110) \times 100 = 90.91$$

*Id.* (equation formatting altered). In the second example above, even though the weighted FTE Resident count of 100 FTEs does not exceed the 100-FTE cap, the allowable FTE Resident count is reduced below the cap. By contrast, a hospital training 110 residents (without post-IRP residents or fellows), would have its allowable FTE count reduced only to its cap: (100 cap / 120 unweighted FTE residents) x 120 weighted FTEs = 100 allowable FTEs.

27.    This proportional reduction is known as the Fellows Penalty.

28.    For these impacted hospitals, the *Hershey* decision held the proportional reduction formula had the effect of reducing the 0.5 statutory weighting factor below 0.5. 2021 WL 1966572, at *5. Because the Secretary was not authorized to alter the statutory weighting factors, the court held the regulation unlawful as applied to the *Hershey* Plaintiffs. *Id*. The court did not vacate the rule but instructed the Secretary to pay Plaintiffs in accordance with the statutory formula.

29.    After *Hershey*, the Secretary "concluded that [CMS's] existing formula for computing the number of FTEs was inconsistent with the statutory requirements" and promulgated a Final Rule that would "implement a modified policy applicable to all

teaching hospitals, effective as of October 1, 2001, which would replace the existing policy at 42 CFR 413.79(c)(2)(iii)." FY 2023 IPPS Final Rule, 87 Fed. Reg. at 49067. The Secretary explained that while the "proportional reduction method struck down in *Hershey* was first effective for cost reports beginning on or after October 1, 1997," the agency was "unaware of any *open or reopenable* [cost reports] for the 1997-2001 period" that were impacted by the Fellows Penalty. *Id.* (emphasis added).

**D. The FY 2023 Retroactive Rulemaking**

30.     Under the Medicare program, a "substantive change in regulations . . . shall not be applied (by extrapolation or otherwise) retroactively to items and services furnished before the effective date of the change, unless the Secretary determines that— (i) such retroactive application is necessary to comply with statutory requirements; or (ii) failure to apply the change retroactively would be contrary to the public interest." § 1395hh(e)(1)(A).

31.     The Secretary's corrected DGME payment formula is retroactive, and the Final Rule explained the agency's belief that retroactive rulemaking was necessary to comply with the statutory requirements under § 1395ww(h)(4) and that retroactive application of the new rule was in the public interest. 87 Fed. Reg. at 49067, 49070.

32.     But the Final Rule contains internal inconsistencies as to how widely the retroactive rule must be applied. The Final Rule acknowledged that it "would cover cost reporting periods for which many  NPRs [(notices of program reimbursement)] have already been settled," and asserted that "[c]onsistent with § 405.1885(c)(2) … the proposed new policy would not be the basis for reopening final settled NPRs." *Id.*

33.    But twice in the Final Rule's Economic Analyses, the Secretary stated that revised DGME payment formula would be "effective for cost reporting periods beginning on or after October 1, 2001, for cost reports that are reopenable or open." *Id. at 49480*; *see also id.* at 49456 ("After reviewing the statutory language regarding the direct GME FTE cap and the court's opinion in [*Hershey*], we are finalizing, as described in greater detail in section V.F.2. of the preamble of this final rule, a modified policy to be applied retroactively and prospectively for all teaching hospitals. Specifically, effective for cost reporting periods beginning on or after October 1, 2001 that are *open or reopenable* …."(emphasis added)).

34.    The Secretary thoroughly explained the public interest justification for retroactive rulemaking:

> We therefore believe that this is a case where the public interest in having a rule applicable to all payments, both past and future, justifies retroactive rulemaking. It would be contrary to the public interest for plaintiffs in *Hershey* and other judicial challenges to have their payments calculated by a different methodology … than other providers that are otherwise similarly situated.

*Id*. at 49070.

35.    At the same time, the Secretary made clear that his decision not to apply the retroactive rule to reopenable cost reports was compelled by his own regulations. The Secretary explained that CMS's authority under 42 C.F.R. 405.1885(c)(1) to direct contractors to reopen and revise cost reports—for instance, "to implement … a final, non-appealable court judgment," *id.*—was "subject to the prohibited reopening's [*sic*] in paragraph (c)(2)," which states that a "'change of legal interpretation or policy by CMS

in a regulation … made in response to judicial precedent,'… is 'not a basis for reopening a CMS or contractor determination.'" 87 Fed. Reg. at 49070 (quoting § 405.1885(c)(2)). The Secretary further concluded that the text of paragraph (c)(2) "does not support" a proposed carve-out for "retroactive rules." *Id.*

## PROVIDERS' APPEALS

36.    Providers here are teaching hospitals that, in fiscal years since October 1, 1997, trained residents, including post-initial residency period residents or fellows, and had unweighted FTE Resident counts that exceeded their applicable caps. When those cost reporting periods were settled, the Secretary employed the unlawful proportional reduction formula of the pre-2022 regulation at 42 C.F.R. § 413.79(c)(2)(iii) resulting in DGME payments that were less than the amount to which Providers were statutorily entitled. 42 U.S.C. § 1395ww(h)(4)(C); *Hershey*, 2021 WL 1966572, at *5; FY 2023 IPPS Final Rule, 87 Fed. Reg. at 48784, 48789, 49065–72, 49406, 49456, 49480.

37.    After the FY 2023 IPPS Final Rule, acknowledging that the Providers were undercompensated for their DGME costs in settled cost reports, but barring them from obtaining any additional reimbursement—even for reopenable cost reporting periods— Providers timely appealed to the Board within 180 days.

38.    On May 17, 2024, the Board *sua sponte* dismissed the Providers' appeals, basing its decision on factual inaccuracies about the contents of the Providers' appeal requests and legal inaccuracies about the requirements of an appeal request. The Board's dismissal decision constitutes the Secretary's final agency action in these matters.

39.     Providers now timely seek judicial review under 42 U.S.C. § 1395oo(f)(1).

## BASES OF APPEAL ON REVIEW

40.     The Medicare Act allows for judicial review of the Board's jurisdictional dismissal "pursuant to the applicable provisions under chapter 7 of title 5," of the APA. 42 U.S.C. § 1395oo(f)(1).

41.     The APA provides that the "reviewing court shall— (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;… (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706.

### BASES FOR APPEAL

### COUNT I: Violation of Medicare Act and APA

42.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth here.

43.     The Court should hold unlawful and set aside the PRRB's decisions dismissing the Hospitals' appeals because the dismissals were:

- Arbitrary, capricious, an abuse of discretion or not in accordance with the law, 5 U.S.C. § 706(2)(A);

- In excess of statutory jurisdiction, authority, or limitations, or short of a statutory right, § 706(2)(C);

- Without observance of procedure required by law, § 706(2)(D); or

- Unsupported by substantial evidence or unwarranted by the facts, § 706(2)(E)-(F).

44.    The Board's dismissals of the Hospitals' appeals were unlawful agency action.

45.    The Providers' appeals satisfied all requirements—including jurisdictional requirements—of the Medicare Act. 42 U.S.C. § 1395oo.

46.    The Board's finding that it lacked jurisdiction because the Final Rule is not an appealable final determination must be set aside under 5 U.S.C. § 706(2) because it is arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, and unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (C); *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron U.S.A. Inc. V. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1981)).

47.    The Providers properly appealed the Secretary's FY 2023 IPPS Final Rule.

48.    The Board's dismissal of the same was contrary to the law.

49.    The Board's stated basis for dismissal was improper. The Board relied on rules, regulations, and caselaw related to a Medicare Administrative Contractor's denial of a hospital's request for reopening. But no such challenge is levied in this matter. Rather, the Providers challenged the Secretary's rulemaking as being inconsistent with § 1395ww(h)(4)(C)(ii), (iv) which does not permit the Secretary to hide behind the reopening regulation at 42 C.F.R. 405.1885 to avoid complying with a court's instruction to pay hospitals according to § 1395ww(h)(4)(C)(ii), (iv).

50.     The Secretary himself recognized in the Final Rule that the payments for the fiscal years the Providers appeal contradict the best reading of the statute and must be corrected.

51.     The Providers challenged his failure to meet his obligation to correct the error after first passing the Final Rule to retroactively correct HHS's failure to follow Congress's statutory mandate, but then refusing to follow through for all hospitals impacted by the error. The Secretary's action was arbitrary, capricious, and contrary to the law.

52.     The Board's decision moreover violated § 706(2) insofar as it relied on the Secretary's misapplication of CMS regulations in prohibiting reopening. *See* 42 C.F.R. §§ 405.1885(a)(3) ("contractor's discretion to reopen … is subject to a contrary directive from CMS to … not reopen"); 405.1885(c)(2) (regulatory changes "made in response to judicial precedent or otherwise" not a basis for reopening).  The Secretary's knowing and continuing violation of a payment statute is not lawful merely because the Secretary said so, and to the extent CMS regulations provide such a rule, they must be stricken as contrary to law.

53.     The Board's alternative basis for dismissal must be set aside as arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, short of statutory right, without observance of procedure required by law, unsupported by substantial evidence and unwarranted by the facts, because Providers met the jurisdictional requirements of § 1395oo(a)(1)(A)(ii) and the minimum filing requirements of 42 C.F.R. § 405.1837.

54.     Providers appealed from a single final rule published in the Federal Register, which rule was to be effective retroactively for the period spanning more than 20 years preceding the Rule's promulgation. The Board Rules require that appeals from a final rule "identify the Federal Register citation and provide the applicable pages of the Federal Register," which the Providers did. Board Rule 7.1.2.3.

55.     Providers' appeal challenged the Secretary's decision that the retroactively revised regulation should be applied to only some cost reports starting in 2001 that were affected by the Secretary's failure to follow the statute. To establish that they are indeed impacted by the final rule, in an amount sufficient to confer jurisdiction, Providers submitted the required calculations of the estimated amount in controversy for a representative closed cost reporting year within the retroactive effective period. The Board's decision fails to acknowledge this fact or provide a reasoned basis for dismissal addressing the same.

56.     The Board unlawfully imposed new jurisdictional requirements when it comes to appeals from retroactive rulemaking when it found that Providers' appeal of a single, retroactive final rule was flawed because Providers did not appeal from the single final rule in multiple filings (one for each impacted cost reporting period), and that Providers failed to include with their appeal the original notices of program reimbursement (**NPRs**) for each impacted past cost reporting period, or other "additional documentation on the Providers' final determination as it relates to the fiscal years at issue[.]" **Exhibit 1** at 18.

57.     The Board's finding that it could not exercise jurisdiction over Providers' challenge to a single final rule without being able to "confirm what years, if any, the contested [rule] applies," as to "*__each__* of the contested years" (emphasis by Board) within the retroactive effective period for all Providers in the group, must be set aside under § 706(2).

### COUNT III: Mandamus under § 1361

58.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth here.

59.     Under 28 U.S.C. § 1361, a court "may grant mandamus relief 'if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff.'" *In re Medicare Reimbursement Litig.*, 414 F.3d at 10 (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)); *see also Monmouth*, 257 F.3d at 813 ("[T]o maintain an action under § 1361, a plaintiff must both exhaust administrative remedies and show a clear nondiscretionary duty.").

60.     Providers have a clear right to relief under § 1395x(v)(1)(A), which provides that the Secretary shall by regulation "provide for the making of suitable retroactive corrective adjustment where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs provides to be either inadequate or excessive"; and under § 405.1885(c)(1)(i), which provides that "a contractor determination or contractor hearing decision must be reopened and revised if CMS provides explicit notice to the contractor that the contractor determination or the contractor hearing decision is inconsistent with the applicable law,

regulations, CMS ruling, or other interpretive rules, general statements of policy, and rules of agency organization, procedure, or practice established by CMS in effect, and as CMS understood those legal provisions, at the time the determination or decision was rendered by the contractor." The FY 2023 Final Rule implementing a revised payment rule that is retroactively effective for cost reporting periods dating back more than 20 years, constitutes explicit notice to contractors (and the public) that Providers' DGME payments are inconsistent with the applicable law and the regulations in effect for those prior cost reporting periods.

61.     At all times, the Secretary had a clear duty to act. Section 1395ww(h)(4)(c) requires that any DGME payment rule "shall" provide for statutorily mandated weighting factors. Plaintiffs' DGME payments were determined under a regulation that was held unlawful by the *Hershey* decision, that was conceded to be unlawful by the Secretary, and that is no longer in effect for any cost reporting period beginning on or after October 1, 2001, as a result of the Secretary's retroactive replacement of the regulation in the FY 2023 IPPS Final Rule.

62.     Additionally, the Secretary "knows or should reasonably be expected to know" Medicare statutory requirements, including the requirement to weight residents as directed in § 1395ww(h)(4)(C), and acknowledged the need to correct the agency's failure identified by the *Hershey* decision.

63.     Providers have no adequate remedy available other than an order from this Court directing the Secretary to reopen and revise Providers' impacted cost reports beginning on or after October 1, 2001. Providers appealed to the Board the Secretary's

decision to only partially comply with his statutory payment obligations, and the Board's dismissal of the appeals on May 17, 2024, constitutes a final agency action. Plaintiffs have therefore exhausted their administrative remedies before seeking mandamus relief. *Monmouth*, 257 F.3d at 813.

### COUNT IV: Failure to Act under § 706(1)

64.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth here.

65.     Under 5 U.S.C. § 706(1), the "reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed."  Agency action is "unlawfully withheld" where the law makes "a specific, unequivocal command," and the requirement is for a "precise, definite act about which an official had no discretion whatever." *Norton v. S. Utah Widerness All.*, 542 U.S. 55, 63 (2004) (cleaned up); *Skalka v. Kelly*, 246 F. Supp. 3d 147 (D.D.C. 2017).

66.     Under § 1395ww(h)(4)(C), the Secretary is compelled to apply certain weighting factors, and despite the Secretary's promulgation of a retroactive rule correcting the prior unlawful formula, he still refuses to apply the statutory weighting factors to Providers' closed, impacted cost reports.

### REQUESTED RELIEF

**Therefore**, Providers respectfully request an Order as follows:

a.   Declaring invalid and vacating the Board's final decision dismissing the Providers' appeal from the Secretary's Final Determination in the FFY 2023 IPPS Final Rule and remanding the Providers' appeal to the Board for reinstatement;

b.  Directing the Secretary to apply the corrected payment formula
    in the FY 2023 IPPS Final Rule to Providers' closed cost
    reporting periods;

c.  Requiring the Secretary to pay Providers' legal fees and costs of
    this suit; and/or

d.  Providing all other relief as this Court deems appropriate.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

By:  */s/ Andrew B. Howk*
     **Andrew B. Howk**, Attorney No. IN0005
     500 N. Meridian Street, Suite 400
     Indianapolis, IN 46204-1293
     Ph: (317) 633-4884
     Fax: (317) 633-4878
     Email: ahowk@hallrender.com

     **Heather D. Mogden,** Attorney No. WI0039
     330 E. Kilbourn Ave., Suite 1250
     Milwaukee, WI 53202
     Ph: (414) 721-0442
     Fax: (414) 721-0491
     Email: hmogden@hallrender.com